**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08-11751 MER |
| ADAM AIRCRAFT INDUSTRIES, INC. ) | |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| JEFFREY A. WEINMAN, ) | Adversary No. 10-1098 MER |
| Chapter 7 Trustee ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH K. WALKER ) | |
| ) | |
| ) | Signed/Docketed |
| Defendant. ) | December 28, 2012 |

**ORDER**

THIS MATTER comes before the Court on the Motion for Partial Summary Judgment filed by the Defendant, the Plaintiff's Response thereto, and the Defendant's Reply.

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H) because it involves an action to recover alleged preferences and fraudulent conveyances.

**BACKGROUND FACTS**

Debtor Adam Aircraft Industries, Inc. ("Debtor") filed its voluntary Chapter 7 petition on February 15, 2008 (the "Petition Date"). Chapter 7 Trustee Jeffrey Weinman ("Weinman") filed his Complaint in this adversary proceeding on January 15, 2010. The Complaint alleges Defendant Joseph Walker ("Walker") was the president of the Debtor pre-petition. According to the Complaint, on February 2, 2007, after having been requested to resign by the Debtor's board of directors, Walker entered into a Memorandum of

Understanding ("MOU") with the Debtor, outlining terms of Walker's separation from the Debtor.  These terms were embodied in two Separation Agreements and Releases executed in February and May of 2007 (the "Separation Agreements").

Pursuant to the MOU and the Separation Agreements, the Debtor agreed, *inter alia*, to refund Walker his deposit for the purchase of an airplane, and to repurchase Walker's stock in the Debtor.  On March 20, 2007, the Debtor paid Walker $105,704.11 as a refund for the aircraft purchase.  On July 31, 2007, the Debtor paid Walker $100,002.00 to repurchase 16,667 shares of the Debtor's stock.

The Complaint contains the following claims for relief: 1) avoidance and recovery of the payments as fraudulent transfers under 11 U.S.C. §§ 548 and 550,[1] as having been made for less than reasonably equivalent value; 2) avoidance and recovery of the payments under §§ 548 and 550, as having been made pursuant to an employment contract with an insider, and outside the ordinary course of business; 3) avoidance and recovery of the payments under §§ 547 and 550 as preferential transfers; and 4) disallowance of any claim Walker may have in the bankruptcy case pursuant to § 502.

In his Answer, Walker admits he requested the refund of the $100,000 associated with the aircraft purchase and the payment for repurchase of shares in the Debtor.  He also admits he entered into the MOU and the two Separation Agreements, and admits he received $105,704.11 on March 20, 2011, as a refund for the aircraft purchase, and $100,002.00 on July 31, 2007, for repurchase of stock.

However, Walker denies the Debtor received less than reasonably equivalent value for the transfers, and denies the Debtor was insolvent when the transfers were made. He further denies he was an insider or a creditor of the Debtor, and denies the transfers were made on account of antecedent debt owed by the Debtor.  Lastly, he denies the transfers enabled him to receive more than he would have received in a Chapter 7 distribution.  He also raises the following affirmative defenses: 1) failure to state a claim upon which relief can be granted; 2) waiver and estoppel; 3) contemporaneous exchange for new value; 4) the obligations were incurred in the ordinary course of business; and 5) Walker provided new value to or for the benefit of the Debtor.

---

[1] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

## WALKER'S MOTION FOR PARTIAL SUMMARY JUDGMENT, TRUSTEE'S RESPONSE, AND WALKER'S REPLY

Walker's Motion for Partial Summary Judgment (the "Motion") asserts Walker resigned as president of the Debtor on February 2, 2007, more than one year prior to the Petition Date. He also alleges he was not present in the Debtor's offices after his resignation, and had no further influence or control over the Debtor's affairs. Therefore, he seeks a ruling he was not an insider, stating such a ruling will narrow the issues for trial.

According to the Trustee's Response, Walker's Motion must be denied for three reasons. First, he asserts the issue of whether a transferee is an insider constitutes a question of fact and is inappropriate for summary judgment. The Trustee claims Walker's affidavits, alone, do not resolve the dispute over whether he was an insider because other evidence suggests Walker maintained an insider relationship after his resignation. Specifically, the Trustee notes Walker continued his friendship with the Debtor's founder, George Adam, and was in contact with the Debtor's human relations department regarding the timing of certain payments in the summer of 2007.[2]

Second, the Trustee maintains the statutory definition of "insider" upon which Walker relies is not the end of the inquiry. Specifically, the Trustee notes case law in the Tenth Circuit indicates qualification as an insider is a question of fact.[3] The Trustee argues although § 101(31) includes an officer or director of a debtor as an insider, a person who does not meet the requirements of § 101(31) may be a "non-statutory insider."[4]

Third, the Trustee states there is a split in authority as to when insider status should be determined under § 547. Some courts have found the date of the transfer is the date for determining insider status under § 547(b)(4)(B), but have not allowed a transferee to escape insider status simply by delaying transfers arranged when the transferee was an insider.[5] However, other courts have read § 547(b)(4)(B) more strictly, requiring a transferee to be an insider

---

[2] *Response* (citing attached deposition of Walker), Exhibit 7 and Exhibit 10.

[3] *Id.* at p. 6 (citing *Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272, 1275 (10th Cir. 2008) and *Cimino v. The Writer Corp. (In re Polk)*, 125 B.R. 293, 296 (Bankr. D. Colo. 1991)).

[4] *Id.* at p. 7 (citing *U.S. Medical*, 531 F.3d at 1276-78; *Polk,* 125 B.R. at 296).

[5] *Id.* at p. 10 (citing, *inter alia*, *De Rosa v. Buildex, Inc. (In re F&S Central Mfg. Corp.)*, 53 B.R. 842, 849 (Bankr. E.D.N.Y. 1985)).

on the date of the transfer for the provision to apply.[6]  The Trustee finds support for this argument in the policy of the 2005 Bankruptcy Code Amendments, stating the amendments are designed to make it easier to recover excessive compensation paid to corporate insiders of debtors.

In addition, the Trustee further argues the determination of whether Walker was a statutory or non-statutory insider at the moment he received any payment from the Debtor is not relevant to his claims under § 548.  Rather, he contends the § 548 claims are based on constructive fraud perpetuated through Walker's written agreements and ongoing relationship with the Debtor.[7]

Walker's Reply states because the Trustee agrees Walker was not an officer or director after February 2, 2007, Walker was not a statutory insider.  Further, Walker argues the Trustee has presented no evidence to rebut the affidavits attached to Walker's Motion indicating he had no control or influence over the Debtor after February 2, 2007.  Walker asserts the occasional emails sent to him by the human resources department of the Debtor, and telephone conversations from board members regarding the severance offer, simply provided information as to his severance pay and other benefits, and did not represent any sort of insider relationship.  He maintains going beyond the statutory definition of "insider" requires control or influence he did not have.

Like the Trustee, he cites the *U.S. Medical* case, alleging an insider relationship must include power over a debtor's decision making.[8]  He argues no evidence suggests he arranged the transfers before his resignation in an effort to avoid insider status. He also denies his friendship with the Debtor's principal, George Adam, creates an insider relationship because it is a mere social relationship.[9]  Finally, he states conflicting case law should not prevent granting his Motion because it does not change the facts of the case, and because the *U.S. Medical* case provides guidance for courts in the Tenth Circuit.

---

[6] *Id.* at p. 11 (citing, *inter alia*, *Zucker v. Freeman (In re Netbank, Inc.)*, 424 B.R. 568, 572 (Bankr. M.D. Fla. 2010)).

[7] *Id.* at p. 12 (citing *TSIC, Inc. v. Thalheimer (In re TSIC, Inc.)*, 428 B.R. 103, 109-10 (Bankr. D. Del. 2010)).

[8] *Reply*, at p. 4 (citing *U.S. Medical,* 531 F.3d at 1277).

[9] *Id.* at p. 4 (citing *Huizar v. Bank of Robstown (In re Huizar)*, 71 B.R. 826 (Bankr. W.D. Tex. 1987)).

## DISCUSSION

### A.   Standard for Summary Judgment

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[10]  The burden for establishing entitlement to summary judgment rests on the movant.[11]  Summary judgment is not appropriate where a dispute exists as to facts which could affect the outcome of the suit under relevant law.[12]  A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[13]  In reviewing motions for summary judgment, the Court must view the record in the light most favorable to the non-moving party.[14]

---

[10]   FED. R. CIV. P. 56, (as incorporated by FED. R. BANKR. P. 7056);  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[11]   *Celotex*, 477 U.S. at 323.

[12]   *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).  In addition, as noted by Chief Judge Howard R. Tallman of this Court:

> This Court exercises great circumspection in the granting of a motion for summary judgment.  There should always be a natural preference for allowing the parties to proceed to a trial on the merits where there is any factual matter subject to a bona fide dispute which bears on the ultimate resolution of the controversy.  *Associated Press v. U.S.*, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1945) ("Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them").  "Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation turns, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment." *Whelan v. New Mexico Western Oil and Gas Company*, 226 F.2d 156, 159 (10th Cir.1955).

*National Labor Relations Board v. Gordon (In re Gordon)*, 303 B.R. 645, 650 (Bankr. D. Colo. 2003).

[13]   *Anderson v. Liberty Lobby*,  477 U.S. 22, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)).

[14]   *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).

### B.	Standards for Determining "Insider" Status

As Walker and the Trustee have noted, the most recent discussion by the United States Court of Appeals for the Tenth Circuit regarding what constitutes an "insider" appears in the *U.S. Medical* case. In *U.S. Medical*, the Tenth Circuit addressed factors for determining whether a party was a "non-statutory" insider.[15] The Court went on to clarify *Kunz* did not mean every close relationship, without more, means a party is a non-statutory insider.[16] Rather, the Court stated: "We hold here that a creditor may only be a non-statutory insider of a debtor when the creditor's transaction of business with the debtor is not at arm's length. . . ."[17]

> [W]here the bankruptcy court considered a variety of factors and found that all relations between Creditor and Debtor were at arm's length . . . a ruling that Creditor is a non-statutory insider does not follow. Although some individuals or entities specifically mentioned in 11 U.S.C. § 101(31) must be insiders even if they operated at arm's length because Congress dictated this "conclusive presumption," a non-statutory insider, by definition, is not operating at arm's length with the debtor. *Kunz*, 489 F.3d at 1079 (quoting *Enterprise*, 319 B.R. at 631) (emphasis omitted); *see* S.Rep. No. 95-989, at 25 (1978);

---

[15] *U.S. Medical,* 531 F.3d at 1276 (Noting there are two categories of "insiders," one who falls within the plain language of § 101(31), and a second category of "non-statutory insider" who does not fall within that language, but has a "sufficiently close relationship with the debtor that . . . conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.") (quoting *Rupp v. United Security Bank (In re Kunz)*, 489 F. 3d 1072, 1078-79 (10th Cir. 2007) (internal quotation marks omitted),

[16] The *U.S. Medical* Court observed:

The case law that has developed . . . indicates that not every creditor-debtor relationship attended by a degree of personal interaction between the parties rises to the level of an insider relationship. A common basis for these rulings was the perception that, while a creditor may be in a strong bargaining position in dealing with the debtor, so long as the parties transact their business at arm's length, such circumstances do not necessarily give rise to insider status even though there was some degree of personal relationship with the debtor. It is unlikely that Congress intended that complex business relationships existing over a period of time, attended by some personal involvement but without control by the creditor over the debtor's business, would subject such creditor to insider status.

*Id.* at 1278 (quoting *Friedman v. Sheila Plotsky Brokers, Inc.* (*In re Friedman*), 126 B.R. 63, 70 (9th Cir. BAP 1991)).

[17] *Id.* at 1280.

H.R.Rep. No. 95-595, at 312 (1977). Therefore, for a bankruptcy court to hold that a creditor is a non-statutory insider in circumstances like these, a trustee must prove that the creditor and debtor did not operate at arm's length at the time of the challenged transaction. *See* S.Rep. No. 95-989, at 25 (1978); H.R.Rep. No. 95-595, at 312 (1977); Resnick & Sommer, *supra*, § 547.03[6].[18]

### C.   Insider Status Remains a Disputed Question of Fact in This Case

In this case, Walker supports his Motion with two affidavits. According to the Affidavit of George F. Adam, Jr. ("Adam"),[19] Adam asked for Walker's resignation on February 1, 2007, but asked Walker to continue to support the Debtor. Adam also states the Debtor's board of directors, not Walker, orchestrated the resignation. Board meeting minutes and a board resolution, both dated February 5, 2007, and reflecting the acceptance of Walker's resignation, are also attached. Walker's own affidavit[20] states Adam advised him on February 1, 2007, his employment was terminated by the board but offered him the opportunity to resign in order not to disrupt the Debtor's business. Walker states he never had further input in the Debtor's operations or business matters. Walker's Affidavit contains a copy of an email from him to Adam dated February 2, 2007, in which he states in part:

> Rick-It is my understanding that the Board of Directors of Adam Aircraft have ask [sic] for my resignation from the Company and the Board effective immediately. I serve at the pleasure of the Board and will abide by their wishes under the following non compete agreement:
>
> 1) I will make myself available to any Board member who wish [sic] to use me as a consultant for a two year period. I will be on a retainer equal to my current salary of $250,000 per year. During this 2 year time period time [sic] I will not join any competitor to Adam Aircraft as a consultant, employee or director.
>
> 2) I will retain my current health care benefits, payable at the current Adam Aircraft rate, during this two year period.

---

[18]   *Id.* at 1280. Other factors mentioned by the Court include use of (not merely access to) insider information about the debtor and undue influence or control by the creditor. *Id.* at 1278-81.

[19]   *Motion*, Exhibit A.

[20]   *Motion*, Exhibit B.

3) I am currently vested in approximately 400,000 options of Adam Aircraft common stock. I would not be asked to pay for these options until there is a change of control in the ownership of the company- typically an IPO or the sale of Adam Aircraft to another company.

4) I currently have $100,000 on deposit for an A500 aircraft. I would like that returned immediately.

Assuming all the above are met, I will continue to be strong supporter [sic] of the Company to the press, our customers and our employees.[21]

The above evidence strongly suggests Walker indeed does not fall within the statutory definition of "insider" included in § 101(31). However, Walker admits his continuing friendship with Adam following February 2, 2007. In addition, although the exhibits attached to both the Motion and the Response refer to the negotiation and execution of Walker's severance document with the Debtor, no information is presented to indicate whether such negotiations, and subsequent payments under such documents, occurred at arm's length. Therefore, there is insufficient evidence to permit the Court to determine the factual question of whether Walker constitutes a "non-statutory insider" as alleged by the Trustee. Accordingly, this issue continues to constitute a disputed issue of material fact. Thus the Court does not reach the issue of the necessary date of insider status, because it cannot yet determine whether such status exists.

## CONCLUSION

Based on the foregoing,

IT IS THEREFORE ORDERED Walker's Motion for Partial Summary Judgment is hereby DENIED.

Dated December 28, 2012

BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge

---

[21] Email dated Friday, February 2, 2007, attached to Motion's Exhibit B.