**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 08-11751 MER |
| ADAM AIRCRAFT INDUSTRIES, INC., | ) | |
| | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JEFFREY A. WEINMAN, TRUSTEE | ) | Adversary No. 10-1098 MER |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH K. WALKER | ) | |
| | ) | |
| | ) | Signed/Docketed |
| Defendant. | ) | June 21, 2013 |

## ORDER

This matter came on for trial on the Complaint filed by Jeffrey A. Weinman, Chapter 7 Trustee ("Trustee") and the Answer filed by Defendant Joseph K. Walker ("Walker"). Based upon the evidence and legal argument presented by the parties, the Court makes the following findings of fact and conclusions of law.[1]

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (F) as it concerns the administration of the estate, the allowance or disallowance of claims against the estate, and a proceeding to determine, avoid or recover transfers.

---

[1] On December 28, 2012, the Court denied Walker's Motion for Partial Summary Judgment. As part of its Order, the Court found the issue of whether Walker was an insider remained a disputed question of fact.

## BACKGROUND FACTS

Debtor Adam Aircraft Industries, Inc. ("AAI") filed its voluntary Chapter 7 petition on February 15, 2008.  Walker was the president of AAI until February 1, 2007.  On the evening of February 1, 2007, F. "Rick" Adam ("Adam") informed Walker that AAI's board of directors had decided to terminate Walker's employment.  Adam told Walker he could resign instead of being terminated to prevent undue disruption of AAI's business, and he asked Walker to continue to support AAI publicly. After meeting with Adam, Walker returned to his office and drafted an e-mail to Adam and AAI's director, Sanjeev Mehra, setting forth several requests in association with his resignation.[2]  Approximately one week later, Walker entered into a Memorandum of Understanding ("MOU") with AAI, outlining the terms of Walker's separation from AAI.[3]  These terms were embodied in two Separation Agreements and Releases executed in February and May of 2007 (the "Separation Agreements").[4]

---

[2]  The e-mail stated in part:

Rick-It is my understanding that the Board of Directors of Adam Aircraft have ask [sic] for my resignation from the Company and the Board effective immediately. I serve at the pleasure of the Board and will abide by their wishes under the following non compete agreement:

1) I will make myself available to any Board member who wish [sic] to use me as a consultant for a two year period.  I will be on a retainer equal to my current salary of $250,000 per year.  During this 2 year time period time [sic] I will not join any competitor to Adam Aircraft as a consultant, employee or director.

2) I will retain my current health care benefits, payable at the current Adam Aircraft rate, during this two year period.

3) I am currently vested in approximately 400,000 options of Adam Aircraft common stock.  I would not be asked to pay for these options until there is a change of control in the ownership of the company- typically an IPO or the sale of Adam Aircraft to another company.

4) I currently have $100,000 on deposit for an A500 aircraft.  I would like that returned immediately.

Assuming all the above are met, I will continue to be strong supporter [sic] of the Company to the press, our customers and our employees.

[3]  Exhibit 3.

[4]  Exhibits 4 and 5.

The MOU provides as follows:

In exchange for a release, [AAI] offers Joseph K. Walker the following consideration:

> 1)  Compensation for twelve months at a rate of $250,000 annualized to be paid monthly beginning March 1, 2007 through February 29, 2008.
>
> 2) Beginning March 1, 2008, monthly compensation for a maximum of six months at a rate of $250,000 annualized if the Adam Aircraft aircraft sales backlog remains intact at a net of 80% of backlog as booked on March 1, 2007 (less LOI from China and orders from firm Pogo).  If at any time after March 1, 2008, the Adam Aircraft aircraft sales backlog falls below a net of 80% as booked on March 1, 2007, monthly compensation will not continue.
>
> 3) Retention of vested stock options as administratively feasible.

Other requests by Joseph K. Walker in memo to Rick Adam dated February 2, 2007, including deposit returns, Series F investments, healthcare benefits will be offered by [AAI] over a period in the future. If Joseph K. Walker engages in employment of a competitive nature at any time during the period compensation is paid by Adam Aircraft, payments will not continue.[5]

The first Separation Agreement, dated February 13, 2013, states:

1.   **Separation Date.**   Employee's employment with Employer terminated effective March 1, 2007.

2.   **Separation Benefits.**   In return for Employee's waiver of the Released Claims against Employee, Employer agrees to provide Employee with severance payments in the amounts outlined in the Memo of Understanding between Adam Aircraft Industries, Inc., and Joseph K. Walker.[6]

---

[5]  Exhibit 3.

[6]  Exhibit 4.

The second Separation Agreement, dated May 18, 2007, changed these initial paragraphs to read as follows:

> 1) **Change of Position Date.**  Employee's employment with Employer terminated effective March 1, 2007.  Employee's position as field sales liaison began with employer [sic] effective March 1, 2007.

> 2) **Change of Position Benefits.**  In return for Employee's waiver of the Released Claims against Employee, Employer agrees to provide Employee with severance payments in the amounts outlined in the Memo of Understanding between Adam Aircraft Industries, Inc., and Joseph K. Walker.[7]

In 2004, Walker paid a deposit toward the purchase an airplane manufactured by AAI.  As a condition of the separation, on March 20, 2007, AAI paid Walker $105,704.11 as a refund for the aircraft deposit.[8]

In September 2006, Walker purchased 16,667 shares of AAI's "Series F" preferred shares of stock.[9]  As part of his separation, AAI agreed to repurchase those shares, and on July 31, 2007, AAI paid Walker $100,002.00 as the repurchase price.[10]

Further, between February 2, 2007, and the date of the bankruptcy petition, AAI paid Walker monthly severance payments totaling $250,000.08.[11]  Walker also filed a proof of claim in the bankruptcy case for $234,931.00, of which $10,950.00 is asserted to be priority wages.[12]

## DISCUSSION

The Trustee's Complaint asserts three claims under 11 U.S.C. §§ 547, 548 and 550 for avoidance and recovery of transfers and one claim under 11 U.S.C.

---

[7]  Exhibit 5.

[8]  Exhibits 7 and 13.

[9]  *Id.*

[10]  Exhibits 7 and 15.

[11]  Exhibit 8.

[12]  Exhibit 10, Claim No. 298.

§ 502 for disallowance of Walker's claim.[13]  Walker denies he was a statutory or non-statutory insider of AAI, and argues any amount paid to him cannot be recovered under either § 547 or § 548.  In addition, he raises the following affirmative defenses:  1) failure to state a claim upon which relief can be granted; 2) waiver and estoppel; 3) contemporaneous exchange for new value; 4) the obligations were incurred in the ordinary course of business; and 5) Walker provided new value to or for the benefit of the Debtor.

## A.   Is Walker an Insider?

Section 547(b) provides the Trustee may avoid any transfer of an interest of the Debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.[14]

---

[13]  Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[14]  Section 547(b).

Thus, pursuant to § 547(b), all transfers within 90 days of the Debtor's bankruptcy filing are considered preferential and subject to avoidance.  If the creditor is an "insider" of the Debtor, however, the Bankruptcy Code enlarges the time period for avoidance to one year before the bankruptcy filing.

Similarly, § 548(a) provides in relevant part:

(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . . (IV) **made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider**, under an employment contract and not in the ordinary course of business.[15]

Here, the aircraft deposit payment and the stock reimbursement payment, and the severance wage payments made before mid-November of 2007 all occurred outside the 90-day window for recovery under §§ 547 and 548.  Thus, the first question the Court must address is whether Walker was an insider.

1.    *Walker is not a statutory insider.*

Pursuant to § 101(31), the definition of "insider" includes:

(B) if the debtor is a corporation-

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a general partner;

---

[15]  § 548(a)(1) (emphasis added).

(v) general partner of the debtor; or

(vi) relative of a general partner director, officer, or person in control of the debtor[.][16]

Although Walker fit the definition of an insider before February 1, 2007, the evidence shows he made a clean break with AAI on that date. He testified he never entered AAI's facility again, nor did he exercise any control over AAI. Further, he indicated he did not learn the identity of the person who had drafted the MOU and the Separation Agreements until trial – his replacement, Duncan Koerbel ("Koerbel"). This testimony was supported by the testimony of Chris Naro, AAI's Chief Financial Officer ("Naro") and Kim Madigan, AAI's Vice President of Human Resources ("Madigan"), who remained employees of AAI and who verified Walker never returned to AAI's premises subsequent to February 1, 2007. Therefore, the Court finds Walker does not fall within the statutory definition of an "insider."

*2.     Walker is not a non-statutory insider.*

The list set forth in § 101(31)(B) is non-exclusive and courts have developed the concept of a "non-statutory insider"[17] to determine whether a person or entity is an insider, even if its relationship with the debtor is not expressly ennumerated in § 101(31). According to the United States Court of Appeals for the Tenth Circuit:

"In ascertaining insider status, then, courts have looked to the closeness of the relationship between the parties and to whether any transactions between them were conducted at arm's length." *In re Krehl*, 86 F.3d 737, 742 (7th Cir. 1996). A leading treatise supports this view. 5 Allen N. Resnick & Henry J. Sommer, Collier on Bankruptcy, ¶ 547.03[6] (15th rev. ed. 2008) ("The consideration of insider status focuses on two factors: (1) the closeness of the relationship between the parties; and (2) whether the transaction was negotiated at arm's length."). Courts have also assessed the presence or absence of control of the debtor by the creditor and whether the creditor has access to inside information. *See Kunz*, 489 F.3d at 1079; *Krehl*, 86 F.3d at 743. The inquiry then is whether there is a

---

[16] § 101(31)(B).

[17] *See, e.g., In re Krehl*, 86 F.3d 737, 741 (7th Cir. 1996) ("By virtue of the nonlimiting term 'includes,' the [statutory] definition is intended to be illustrative rather than exhaustive."); *Farr v. Phase-I Molecular Toxicology, Inc. (In re Phase-I Molecular Toxicology, Inc.)*, 287 B.R. 571, 580 (Bankr. D. N.M. 2002) ("[T]he list of insider relationships contained in 11 U.S.C. § 101(31) is not exhaustive.").

close relationship and whether there is anything other than closeness to suggest that any transactions were not conducted at arm's length. *See Krehl*, 86 F.3d at 742.

. . .

We hold here that a creditor may only be a non-statutory insider of a debtor when the creditor's transaction of business with the debtor is not at arm's length; a bankruptcy court, however, may find a statutory insider without this requirement. The "ordinary course of business" defense is still available for any transactions between a non-statutory insider and a debtor as well as for transactions between a statutory insider and a debtor that are in "the ordinary course of business"-transactions that must be at arm's length. 11 U.S.C. § 547(c)(2)(A).

. . .

Therefore, for a bankruptcy court to hold that a creditor is a non-statutory insider in circumstances like these, a trustee must prove that the creditor and debtor did not operate at arm's length at the time of the challenged transaction. See S.Rep. No. 95-989, at 25 (1978); H.R.Rep. No. 95-595, at 312 (1977); Resnick & Sommer, *supra*, § 547.03[6].[18]

Here, the evidence supports a finding Walker is not a non-statutory insider.  Other than providing the outline of a proposed severance agreement, Walker did not orchestrate or exercise any control over his termination.  Rather, the evidence reflects AAI's board of directors acted independently from Walker and from Adam, AAI's founder.  Further, there was no evidence Walker was involved in any business decision or in any operations of AAI after his termination on February 1, 2007.

Although the Trustee emphasizes Naro's negative reaction to AAI's paying Walker's severance while it was paying Koerbel's salary, this Court finds Naro's alarm to be a red herring since he had no involvement in the decision and his reaction has no bearing on the determination of whether AAI's agreement with Walker had been reached at arm's length.

---

[18] *Anstine v. Carl Zeiss Meditec AG (In re U.S. Medical, Inc.)*, 531 F.3d 1272, 1277-80 (10th Cir. 2008) (citing, *inter alia*, *Rupp v. United Security Bank (In re Kunz)*, 489 F.3d 1072 (10th Cir. 2007)).

Rather, Walker's arrangement reflects an arm's-length agreement.[19] Specifically, the board of directors, without any input or control by Walker, decided to terminate him and hire a different CEO.  Walker agreed to leave, but asked for certain payments and benefits in return for refraining from taking a position with a competing business, for remaining supportive of AAI as Adam had requested, and for waiving potential wrongful termination claims against AAI.  The evidence supports a finding the directors were willing to grant Walker's requests in exchange for noncompetition, goodwill, and waiver of claims.  They could have chosen not to do so, and Walker could have obtained alternative employment in the aircraft industry.

The unrebutted evidence indicates Walker holds a high reputation in the industry and could have found another position easily. The Trustee argued this reputation made Walker an insider because it gave him the ability to damage AAI by working for a competing company or speaking negatively about AAI. This is another red herring.  The fact Walker was well respected in the industry does not mean Walker was an insider of AAI at the time of the MOU and Separation Agreements.  It merely means Walker had a good reputation in the industry.  In addition, although the evidence shows Walker's wife was experiencing severe health problems, nothing suggests he would have refused other employment if AAI had not reached an agreement with him.

Further, the Trustee makes much ado about the undisputed fact Walker contacted Madigan directly, asking for a status on his refunds under the MOU and Initial Severance Agreement.  However, mere inquiry does not an insider make.  The Trustee also notes Madigan caused AAI's accounting department to issue a check to Walker to refund his airplane deposit without first discussing the matter with Naro.  Perhaps that was a mistake by Madigan, but it had nothing to do with Walker.

Moreover, the Trustee states "in the early morning hours of July 1, 2007," shortly after the Morgan Stanley funding closed, Madigan wrote an e-mail to Naro asking to expedite Walker's stock refund payment.  This also fails to support an argument Walker is an insider.  There is no evidence Walker had any part in AAI's decision to structure the Morgan Stanley financing to accommodate Walker's severance payments, and no evidence Walker caused Madigan to write

---

[19]  The *U.S Medical* Court noted:

An arm's-length transaction is "[a] transaction in good faith in the ordinary course of business by parties with independent interests.… The standard under which unrelated parties, each acting in his or her own best interest, would carry out a particular transaction." Black's Law Dictionary 109 (6th ed. 1990).

*U.S. Medical*, at 1277 n.4.

the e-mail by exercising control over AAI or that the MOU and Separation Agreements were not arm's-length transactions.

In addition, the Court concludes AAI independently decided to change the Separation Agreement to characterize Walker as a nominal "consultant/field liaison," and keep the terms of the Separation Agreement confidential.  Those actions have nothing to do with control by Walker or lack of an arm's-length relationship with Walker.

The Trustee emphasizes Mr. Knudsen, terminated days before the bankruptcy petition, did not receive severance payments, and Adam himself did not receive a return of his aircraft deposit.  The Trustee suggests AAI's insistence on confidentiality with respect to Walker's Separation Agreements was necessary to avoid setting any precedent within the company for similar severance arrangements.  Again, these matters are red herrings.  There is no evidence Walker had any part in deciding confidentiality was important.  He received different treatment from certain other officers of AAI, at a much earlier time, which treatment he negotiated at arms length after he was essentially blind sided by a firing/forced resignation.  Actions by AAI, either at the time of Walker's termination or at the much later termination of other officers, do not make Walker an insider or make his arguments suspect.

3.    *The transfers to Walker did not occur pursuant to an employment contract.*

As noted above, §§ 548(a)(1)(B)(i) and(ii)(IV) provides a transfer is avoidable when a debtor:

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

> (ii)(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, **under an employment contract and not in the ordinary course of business**.[20]

In addition to asserting Walker is an insider, the Trustee asserts AAI's transfers to Walker occurred "under an employment contract."  He argues the MOU and the Separation Agreements constitute an employment contract.

The case law regarding § 548(a)(1)(B)(i) and (ii)(IV) is sparse.  Two cases, each discussed by the parties in their briefs, found severance payments

---

[20]  § 548(a)(1)(B)(i) and (ii)(IV) (emphasis added).

to former insiders were constructively fraudulent under § 548(a)(1)(B).[21] Although the executives receiving the payments were not insiders when the payments were made, they were insiders at the time the payments were arranged.[22]  These cases are different from the case at bar because Walker had no pre-existing employment contract containing a severance provision.  Rather, Walker had only the MOU and the Separation Agreements, negotiated and executed after he was no longer an insider.  Based on the documents themselves, as well as supporting witness testimony, the MOU and the Separation Agreements are written agreements containing the terms for leaving employment, not for accepting employment or extending employment.[23]  Thus, the Court finds the MOU and Separation Agreements do not constitute an employment contract for purposes of § 548(a)(1)(B).

For the above reasons, the Court finds the insider provisions of §§ 547 and 548 do not apply to Walker.  The remaining question is whether Walker is liable for any transfers under § 548 made for which AAI did not receive reasonably equivalent value (First Claim for Relief), or for any transfers made under the non-insider provisions of § 547 (Third Claim for Relief).

**B.    Are transfers to Walker avoidable under non-insider provisions of § 548?**

In pertinent part, § 548 provides:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the

---

[21]  *In re TransTexas Gas Corp.*, 597 F.3d 298 (5th Cir. 2010);  *In re TSIC, supra.*

[22]  *Id.*

[23]  The Court agrees with Walker the second Separation Agreement's change of his termination date to March 1, 2007, and his being given the title of "field sales liaison," did not reflect the true status of Walker.  Whatever reason AAI may have had for placing that language in the second Separation Agreement, the evidence shows Walker was terminated as of February 1, 2007, and was not an employee of AAI in field sales thereafter.

debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or]

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. . . .[24]

Under § 548, a trustee may recover two types of transfers made within two years of a bankruptcy petition:  1) a transfer made by the debtor with actual intent to defraud creditors in making the transfer (actual fraud); or 2) a transfer from which the debtor received less than "a reasonably equivalent value" in exchange, and was or became insolvent when the transfer was made (constructive fraud).[25]

Section 550(a) further provides to the extent  a transfer is avoided under § 548, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from," among others, "the initial transferee of such transfer."[26]  The Bankruptcy Code thus gives the bankruptcy trustee the ability to avoid fraudulent transfers under § 548 and to recover the value of those transfers from "initial transferees" under § 550(a)(1).

In this case, the Trustee has not attempted to show AAI made the disputed transfers of funds to Walker with the actual intent to defraud creditors under § 548(a)(1)(A).  Rather, the issue before the Court is whether the

---

[24]  Section 548(a)(1).

[25]  *Wadsworth v. The Word of Life Christian Center (In re McGough)*, 467 B.R. 220, 224 (10th Cir. BAP 2012).  *See also Picard v. Katz*, 462 B.R. 447, 451 (S.D.N.Y. 2011).

[26]  Section 550(a)(1).

transfers may be avoided as constructively fraudulent under § 548(a)(1)(B).  To establish a claim for avoidance under § 548(a)(1)(B), a party must demonstrate a transfer or obligation was incurred for less than reasonably equivalent value and then must show one of the four conditions set forth in subsection (B)(ii) applies.[27]  The entity seeking to avoid a transfer under § 548(a)(1)(B) bears the burden of proof by a preponderance of the evidence.[28]

>    1.    *Did Walker Give Reasonably Equivalent Value for Transfers Received from AAI?*

The United States Supreme Court found the only term in the phrase "reasonably equivalent value" defined in the Bankruptcy Code is "value," which "means property, or satisfaction or securing of a present or antecedent debt of the debtor."[29]  Further, the Bankruptcy Code does not define the term "antecedent debt," but it does define "debt" as "liability on a claim."[30]

Value for purposes of determining whether a transfer is avoidable under § 548(a)(1)(B) must be "tangible, concrete, and quantified with reasonable precision."[31]  However, as pointed out by the *McKay* Court, "[b]ecause the Bankruptcy Code's definition of 'value' includes 'satisfaction of an antecedent debt' and because the Code's definition of 'debt' includes 'liability on a claim,'" a court analyzing a § 548(a)(2) claim must determine whether a transferee has a claim against the debtor, and, if so, whether the transfers reduced the claim, "thereby providing 'reasonably equivalent value.'"[32]

Here, there is no dispute the MOU and the Separation Agreements gave rise to a claim by Walker against AAI.  There is further no dispute the claim includes repayment of Walker's aircraft deposit and stock purchases, and

---

[27]  Section 548(a)(1)(B)(i), (ii)(I)-(IV).

[28]  *Jobin v. McKay (In re M & L Business Machine Company, Inc.)*, 155 B.R. 531, 534 (Bankr. D. Colo. 1993)

[29]  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535-36 (1994) (citing 11 U.S.C. § 548(d)(2)(A)).  Since the Court determined above Walker is not an insider for purposes of the claims brought by the Trustee, the fourth condition does not apply.

[30]  Section 101(12); *See also Jobin v. McKay (In re M & L Business Machine Company, Inc.)*, 84 F.3d 1330, 1340 (10th Cir. 1996).

[31]  *Unsecured Creditors' Committee v. Citicorp North America, Inc. (In re TOUSA, Inc.)*, 408 B.R. 434, 438 (Bankr. S.D. Fla.2009).

[32]  *McKay, supra*, at 1340; *see also Wagner v. Pruett*, 477 B.R. 206, 222 (Bankr. D. N.M. 2012).

payment of Walker's severance payments.  Each of such transfers made to Walker reduced Walker's claim under the MOU and the Separation Agreements, and such reductions gave AAI "reasonably equivalent value" for the transfers under § 101(12) and *McKay*.  Accordingly, the Trustee cannot meet his burden of showing AAI did not receive reasonably equivalent value, and the § 548 claim must fail.

## C.    Did Walker Receive Non-Insider Transfers Avoidable Under § 547?

"It is the ultimate aim of the preference law in the Bankruptcy Code to insure that all creditors receive an equal distribution from the available assets of the debtor."[33]  Section 547 is intended to prevent an insider from taking advantage of a debtor by "obtain[ing] more favorable repayment of the debt at the expense of the debtor's other creditors."[34]  "The most important purpose of section 547(b) is to facilitate equal distribution of the debtor's assets among the creditors."[35]  The Trustee bears the burden of proving the elements of a preferential transfer or fraudulent transfer by a preponderance of the evidence.[36]  Walker has the burden of proof on any affirmative defenses.[37]

### 1.    *Transfer of an interest of the debtor in property.*

According to Naro, Walker received ongoing severance payments from November 15, 2007, through February 15, 2008, or within ninety days of the filing of the bankruptcy petition.  No other transfers were made to Walker during this time.  The MOU indicates Walker would receive compensation at a rate of $250,000 per annum.[38]  In addition, Exhibit 8 supports a finding Walker received severance payments of $10,416.67 twice per month, or $20,833,34 per month from November 15, 2007, through February 15, 2008, for a total

---

[33]  *In re Perma Pacific Properties*, 983 F.2d 964, 968 (10th Cir. 1992).

[34]  *Seiter v. Wedow (In re Tankersley)*, 382 B.R. 522, 525 (Bankr. D. Kan. 2008).

[35]  *Johnson v. Barnhill (In re Antweil)*, 931 F.2d 689, 692 (10th Cir. 1991).

[36]  Section 547(g); *Sender v. Johnson* (*In re Hedged Investment Associates, Inc.*), 84 F.3d 1267, 1270 (10th Cir. 1996); *ABB Vecto Gray, Inc. v. First Nat'l Bank* (*In re Robinson Bros. Drilling, Inc.*), 9 F.3d 871, 874 (10th Cir. 1993).

[37]  Section 547(g); *Clark v. Balcor Real Estate Finance, Inc.* (*In re Meredith Hoffman Partners*), 12 F.3d 1549, 1553 (10th Cir. 1993).

[38]  Exhibit 3.

payment of $62,500.02.[39]  These funds are property in which AAI, prior to the transfer, had an interest by virtue of holding said funds in its bank accounts.[40]

>    2.    *To or for the benefit of a creditor.*

As determined above, Walker had a claim against AAI pursuant to the MOU and Separation Agreements.  Therefore, he was a creditor of AAI at the time of the transfers.

>    3.    *For or on account of an antecedent debt owed by the debtor before such transfer was made.*

Again, as noted above, the debt owed to Walker by AAI arose from the MOU and the Separation Agreements, and existed before the disputed transfers were made.  With respect to when the liability arose, this Court previously adopted the following analysis set forth in *Enron*:

> [S]ection 547(b) applies to transfers on account of debts which precede and are not contemporaneous with the transfer, and for which the debtor is liable, whether that liability is matured, contingent, disputed, *et cetera*.  The Court also concludes that the [transfer] was made "for or on account of an antecedent debt owed by the debtor before the transfer was made" within the meaning of section 547(b).  While [the employee] did not have an enforceable right to payment at the time the [transfer] was made, he clearly did have an unmatured right to payment that preceded the [transfer].  A "debt" was created at the time the Agreement was signed, and as that debt preceded the [transfer], the [transfer] was made "for or on account of an antecedent debt."  Moreover, [the employee] held his right to payment as against Enron, and therefore, the debt was "owed by the debtor before the transfer was made."  That the [transfer] was made one day before the obligation matured and became due is thus not relevant.[41]

---

[39]  Exhibit 8, Adam's payroll records for the period ending February 23, 2007 and the period ending February 8, 2008.

[40]  *See* Exhibit 11.  "Property" is not a defined term under § 101 of the Bankruptcy Code, but the Court notes Black's Law Dictionary defines "personal property" as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property."  BLACK'S LAW DICTIONARY (9th ed. 2009).  This definition would certainly include money.

[41]  *Committee of Unsecured Creditors v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 48-49 (Bankr. S.D.N.Y. 2006).

Therefore, the Court finds the liability of AAI to Walker arose from the dates of the MOU and Separation Agreements, consistent with the Tenth Circuit's directive to construe the terms "debt," "claim" and "antecedent debt" broadly.[42]

      *4.     Made while the debtor was insolvent.*

The Bankruptcy Code defines "insolvent" as:

> a financial condition such that the sum of such entity's debts is greater than all of such entity's property at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title.[43]

A debtor is presumed to be insolvent during the ninety days preceding bankruptcy.[44]  Although Adam testified he believed the company to be solvent during at least a portion of 2007, the Trustee's evidence rebuts that testimony.

According to AAI's consolidated balance sheet for the months of January, February, and March 2007, AAI's assets exceeded its liabilities, and stockholder equity was positive.[45]  For the month of April 2007, the balance sheet shows total assets of $28,924,100, and total liabilities of $30,791,300.  In addition, stockholder equity for April 2007 was ($1,867,300).  Accordingly, in April 2007, AAI was insolvent under the balance sheet test set forth in § 101(32)(A).  Moreover, although AAI's assets increased due to the infusions of capital in May 2007, AAI's total liabilities still exceeded its total assets, and its current liabilities exceeded its current assets, for the remaining months of 2007, with the exception of May 2007.  Therefore, the Court may presume insolvency in the ninety days prior to the February 15, 2008 petition date.

      *5.     Made on or within 90 days before the date of the filing of the petition.*

Walker testified he received severance payments until the filing of the bankruptcy.  As noted above, the figures from Exhibits 8 and 11 support a

---

[42]  *See McKay, supra,* at 1340.

[43]  Section 101(32)(A).  This definition sets forth the "balance sheet" test for insolvency.

[44]  Section 547(f).

[45]  See Exhibit 11, at p.3.

finding he received approximately $62,500.02 during the ninety days preceding the bankruptcy petition.

> 6.    *That enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.*

Walker's proof of claim asserts he is owed $145,831, of which $10,950 should be classified as priority wages.  In the ninety days before bankruptcy he received approximately 43% of that amount, or $62,500.02.  According the to the testimony of the Trustee, creditors will likely receive less than ten percent of their claims.  Therefore, Walker received more than he would have received in a liquidation and the transfer had not been made.

## D.    Defenses to Preferential Transfers under 11 U.S.C. § 547.

Although the elements of § 547(b) are satisfied, Walker raised three defenses to recovery:  1) there was a contemporaneous exchange for new value given to AAI under § 547(c)(1); 2) the payment was incurred and made in the ordinary course of AAI's business under § 547(c)(2); and 3) Walker gave new value to AAI after the transfer under § 547(c)(4).

> 1.    *Contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1).*

Section 547(c)(1) provides:

(c)  The trustee may not avoid under this section a transfer–

> (1)  to the extent that such transfer was–

> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

> > (B) in fact a substantially contemporaneous exchange.[46]

---

[46]  Section 547(c)(1).  This is a concept distinct from "reasonably equivalent value" under § 548 discussed above.  As described by the Bankruptcy Court for the Middle District of Florida:

The Bankruptcy Court for the Northern District of Oklahoma has summarized the Tenth Circuit's view on "new value" as follows:

"Section 547(c)(1) protects transfers that do not result in a diminution of the estate-unsecured creditors are not harmed by the targeted transfer if the estate was replenished by an infusion of assets that are of roughly equal value to those that were transferred." *Manchester v. First Bank & Trust Co.* (*In re Moses*), 256 B.R. 641, 652 (B.A.P. 10th Cir. 2000) (citations omitted). "Thus, for § 547(c)(1) to apply, the value given for the transfer must actually and in real terms enhance the worth of debtor's estate so as to offset the reduction in the estate the transfer caused." *Lubman v. C.A. Guard Masonry Contractor, Inc.* (*In re Gem Constr. Corp.*), 262 B.R. 638, 645-46 (Bankr. E.D. Va. 2000) (citation omitted). Because Section 547 expressly protects transfers only "to the extent" the transfer was for new value, "[a] court must measure the value given to the creditor and the new value given to the debtor in determining the extent to which the trustee may avoid a contemporaneous exchange." *Lowrey v. U.P.G., Inc.* (*In re Robinson Bros. Drilling, Inc.*), 877 F.2d 32, 34 (10th Cir. 1989) (citations omitted). "[A] party seeking the shelter of section 547(c)(1) must prove the specific measure of the new value given to the debtor in the exchange." *Id.*, quoting *Jet Florida, Inc. v. Am. Airlines, Inc.* (*In re Jet Florida Sys., Inc.*), 861 F.2d 1556, 1558 (11th Cir. 1988). "Moreover, the Bankruptcy Code's definition of the term "new value" implies that the creditor must prove the specific valuation in "money or money's worth in goods, services, or new credit." *Id.* (citation omitted). "A vast majority of courts agree that 'new value' for purposes of § 547 must be something of tangible economic value." *Phoenix Rest. Group, Inc. v. Fuller, Fuller & Assocs., P.A.* (*In re*

---

[T]he requirement of specific proof of valuation separates the § 547(a)(2) "new value" test from the § 548 "reasonably equivalent value" concept—the former is an economic analysis, while the latter is merely an anti-fraud provision. It is this distinction that allows a court to conclude that a preferential transfer is not fraudulent under § 548 because "reasonably equivalent value" was given and at the same time to conclude that the same preferential transfer may be avoided because insufficient "new value" was provided to satisfy § 547(c)(1) or § 547(c)(4). Not all consideration qualifies as "new value."

*Jones v Ryder Integrated Logistics, Inc. (In re Jotan, Inc.)*, 264 B.R. 735, 751 n.6 (Bankr. M.D. Fla. 2001). *See also Sarachek v. Twin City Poultry (In re Agriprocessors, Inc.)*, 2013 WL 1402414, at *5 (Bankr. N.D. Iowa Apr. 3, 2013) (Slip Copy) and *Sarachek v. Cohen (In re Agriprocessors, Inc.)*, 2013 WL 1385400, at *5 (Bankr. N.D. Iowa Apr. 3, 2013) (Slip Copy) (both citing *Jotan*).

Page 18 of  23

*Phoenix Rest. Group, Inc.*), 316 B.R. 671, 679 (Bankr. M.D. Tenn. 2004) (citations omitted); *see also Peltz v. New Age Consulting Servs., Inc.*, 279 B.R. 99 (Bankr. D.Del. 2002) (release given in settlement of state court litigation did not provide any new value for purposes of an exception to preference recovery).[47]

The *Enron* Court noted a presumption exists for contractually agreed payment to have a value equal to the value of services or goods provided.[48] However, in this case, Walker's agreement not to take a competing position, not to file suit against AAI, and to present AAI positively to the public, do not "prove the specific measure of the new value given to the debtor in the exchange." The Court therefore concludes Walker's "contemporaneous exchange for new value" defense under § 547(c)(1) must fail because specific value cannot be attributed to any of Walker's agreements, and they did not "actually and in real terms enhance the worth of the debtor's estate."[49]

    2.    *New value after the transfer under 11 U.S.C. § 547(c)(4).*

Section 547(c)(4) provides:

(c) The trustee may not avoid under this section a transfer--

    (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--

        (A) not secured by an otherwise unavoidable security interest; and

---

[47] *Reynolds v. Haskins* (*In re Git-N-Go, Inc.*), 2007 WL 2816215, at *7 (Bankr. N.D. Okla., September 25, 2007) (Not Reported in B.R.). For example, the Court notes courts have found value in certain non-compete agreements, and none in others. *See Tomsic v. Pitoccelli (In re Tri-Star Technologies Co., Inc.)*, 260 B.R. 319, 328 (Bankr. D. Mass. 2001); *Daley v. Chang (In re Joy Recovery Technology Corp.)*, 286 B.R. 54, 75 (Bankr. N.D. Ill. 2002). In this case, however, there is no evidence of a specific offer to work for a competing company for a specific amount turned down by Walker, so no value can be determined for his non-compete agreement.

[48] *Enron*, 357 B.R. at 50.

[49] *Git-N-Go*, 2007 WL 2816215, at *7 (*quoting Lubman v. C.A. Guard Masonry Contractor, Inc. (In re Gem Const. Corp. of Virginia)*, 262 B.R. 638, 645-646 (Bankr. E.D. Va. 2000) (internal quotation marks omitted)).

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.[50]

The above discussion regarding contemporaneous exchange for new value under § 547(c)(1) is instructive regarding this defense as well.  The duration of the agreements Walker made extended after the transfers made within ninety days of the bankruptcy petition, *i.e.,* to refrain from competing against AAI, to refrain from filing suit against AAI, and to present AAI in a positive light to the public.  However, as noted above, there was no evidence these agreements had any value, especially to a debtor that had ceased to operate.  Therefore, the Court finds Walker has not sustained his burden under § 547(c)(4) and this defense also must fail.

3.    *Ordinary course under 11 U.S.C. § 547(c)(2).*

Section 547(c)(2) provides:

(c) The trustee may not avoid under this section a transfer--

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B) made according to ordinary business terms.[51]

The Tenth Circuit has determined this statutory defense should be narrowly construed.[52]  In order to establish the ordinary course defense, Walker must show either 1) the severance payments were ordinary as between Walker and AAI (the "subjective" element of § 547(c)(2)(A));[53] or 2) the severance payments were made according to "ordinary business terms . . . used in normal financing relations:  the kinds of terms that creditors and debtors use in

---

[50]  Section 547(c)(4).

[51]  Section 547(c)(2).

[52]   *McKay, supra,* at 1339.

[53]   *Milk Palace Dairy, LLC v. L & N Pump, Inc. (In re Milk Palace Dairy, LLC)*, 385 B.R. 765, 769 (10th Cir. BAP 2008).

ordinary circumstances, when debtors are healthy" (the "objective" element of § 547(c)(2)(B)).[54]

Although businesses commonly hire and terminate employees, and often have severance agreements, the severance agreement here is a unique agreement between Walker and AAI for a unique event – Walker's separation from AAI. Specifically, there is no previous history of severance agreements between these parties, and the severance agreements of the other officers cannot be used to show the course of business of AAI and its officers regarding severance agreements. The other officers' agreements were preceded by employment agreements. Walker's severance agreement was not. Therefore, the severance payments were not made in the ordinary course of business between the parties – Walker and AAI – and cannot satisfy the "subjective" test of § 547(c)(2)(A).

However, Walker contends the severance payments were comparable to the amounts AAI agreed to pay other senior level management in the company and the terms of the MOU and the Separation Agreements were comparable to such agreements in AAI's industry. Walker points to proofs of claim by other executives to argue the amount AAI and Walker agreed to for severance was within the ordinary course of business and financial affairs of AAI.[55] Thus, he appears to assert that the "objective" criterion of § 547(c)(2)(B) applies to the payments.

The payments made during the ninety days before the bankruptcy petition, however, were not made while AAI was healthy, and were not made in an "ordinary situation."[56] Specifically, AAI was losing money, and trying desperately to obtain additional financing. Paying severance payments to Walker during this time did not further the goal of "leav[ing] undisturbed normal financing relations."[57]

---

[54] *Id.*, at 770 (quoting *Balcor Real Estate Finance, Inc.*, *supra*, at 1553) (internal quotation marks omitted).

[55] *See* Exhibit 19 (proof of claim of Naro), Exhibit 20 (proof of claim of Koerbel), and Exhibit 21 (proof of claim of Knudsen).

[56] *Jagow v. Grunwald (In re Allied Carries' Exchange, Inc.)*, 375 B.R. 610, 617 (10th Cir. BAP 2007) (citing *Balcor Real Estate Finance, Inc.*, *supra*, at 1553).

[57] *See* S. Rep. No. 989, at 88 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874. *See also Gonzales v. Conagra Grocery Products Company (In re Furr's Supermarkets, Inc.)*, 373 B.R. 691, 707 (10th Cir. BAP 2007).

Finally, Walker asserted his severance agreement was like others in the aviation industry, based on his own experience, but he did not provide specific evidence to support that assertion, other than indicating other officers of AAI received severance agreements.  However, the other officers' agreements provide only examples of transactions AAI engaged in, and arose under circumstances different from those of Walker.  Therefore, Walker has not shown by a preponderance of the evidence the severance payments made during the three months before the bankruptcy filing were made in accordance with the standards of the aviation industry.  He did not produce objective evidence of the "range of prevailing practices" in the industry for similar transactions.[58] Therefore, Walker's defense under § 547(c)(2) also fails.

For the above reasons, the Court finds the Trustee has demonstrated the severance payments Walker received in the ninety days prior to the bankruptcy proceeding are avoidable pursuant to § 547.

## E.    Claims Objection Under § 502

Section 502 requires disallowance of a claim of "any entity from which property is recoverable under [§ 550] or that is a transferee of a transfer avoidable under [§§ 547 or 548], unless such entity or transferee has paid the amount . . . for which such entity or transferee is liable . . . ."[59]  Given this litigation, Walker has not paid the Trustee the recoverable portion of the funds he received, namely the severance payments for the ninety days prior to the bankruptcy petition.  Unless Walker pays such funds to the Trustee for the benefit of the estate within thirty days of the days of this Order, Walker's claim must be disallowed, such that he will be unable to share in any distribution of assets of the estate.[60]

---

[58] *See Montoya v. Citizens Bank of Las Cruces (In re Khera)*, 2008 WL 5157769, at *6 (Bankr. D. N.M. August 21, 2008) (not reported in B.R.) (Under the objective test, "[t]he creditor must show that the disputed transaction was made in accordance with the standards of the relevant industry.  In addition, a creditor must produce objective evidence of the range of prevailing practices within the creditor's industry involving similar transactions to the transfer in question.") (citing *Rocin Liquidation Estate v. Alta AH & L (In re Rocor International, Inc.)*, 352 B.R. 319, 334-35 (Bankr. W.D. Okla. 2006)

[59]  Section 502(d).

[60]  *See Rhythms NetConnections, Inc. v. Cisco Systems, Inc. (In re Rhythms NetConnections, Inc.)*, 300 B.R. 404, 409 (Bankr. S.D.N.Y. 2003) and cases cited therein. (Section 502 precludes those who have received voidable transfers from sharing in the distribution of the assets of the estate unless and until the voidable transfer has been repaid, and is triggered after a creditor has been given a reasonable time to turn over amounts adjudicated to be avoidable transfers.)

## CONCLUSION

IT IS THEREFORE ORDERED judgment shall enter in favor of the Defendant and against the Plaintiff, with respect to payments made to the Defendant before ninety days prior to the bankruptcy filing.

IT IS FURTHER ORDERED judgment in the amount of $62,500.02 shall enter in favor of the Plaintiff and against the Defendant pursuant to § 547(b).

IT IS FURTHER ORDERED each party shall bear its own fees and costs.

Dated June 21, 2013                BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge